KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kristopher B. Kastens, Esq.,
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065
Tel: (650) 752-1700
Fax: (650) 752-1800

*Attorneys for Petitioner Centripetal Networks, LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| In the Matter of the Application of CENTRIPETAL NETWORKS, LLC, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings, Pursuant to the Federal Rules of Civil Procedure, from Respondent Cisco Systems, Inc. | Case No.<br><br>DECLARATION OF MIRIAM KIEFER LL.M. IN SUPPORT OF PETITIONERS' APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782 |

I, MIRIAM KIEFER LL.M., hereby declare as follows:

1. My name is Miriam Kiefer. I am an attorney-at-law and have been admitted to practice law in Germany since 2005. I am registered and in good standing with the Düsseldorf Bar and admitted to practice before the German courts. I am a partner of the firm Kather Augenstein Partnerschaftsgesellschaft mbB, which is a spin-off from a long-established German law firm and which was established in 2016.

2. My firm represents Centripetal Networks, LLC ("Centripetal") in a patent-infringement action against Cisco Systems, Inc. ("Cisco") that is currently pending before the Düsseldorf Higher Regional Court in Germany, and which is entitled *Centripetal Networks, Inc. v. Cisco Systems, Inc. et al.*, I-2 U 38/21 (the "German Infringement Action").

3. I make this declaration based on my personal knowledge, documents from Centripetal that I have reviewed, and legal and factual research that I have conducted or that was conducted under my supervision.

A. BACKGROUND OF THE PARTIES' DISPUTE

4. Centripetal is a network security company formed under the laws of Delaware and headquartered in Virginia.

5. Cisco is a digital communications technology corporation headquartered in San Jose, California and incorporated in Delaware.

6. On April 30, 2020, Centripetal filed suit against Cisco in the Regional Court, Düsseldorf, Germany, Patent Litigation Chamber (the "Düsseldorf Trial Court"), alleging that

Cisco's routers, switches, firewalls, and other network security products infringed on Centripetal's European patent, EP 2 944 065 (the "EP 065 Patent"). Ex. C-1.[1]

7. The EP 065 Patent claims a method for efficiently swapping between rule sets for packet processing in a network protection device. Before a message (*i.e.*, a collection of related data) is sent across the internet between computer systems, it is broken down by the transmitting system into smaller pieces called "packets" for transport. The packets are sent across the network and must be reassembled by the receiving system. Certain computer-networking devices—*i.e.*, routers, switches, and firewalls—implement rule sets that either accept or discard packet traffic received over a network connection.

8. The method claimed by the EP 065 Patent switches between packet-processing rule sets in a novel way. The method comprises the steps of: (i) receiving and preprocessing packets in accordance with a first and a second rule set; (ii) configuring a plurality of processors to process packets in accordance with the first rule set; (iii) processing received packets in accordance with the first rule set; and then (iv) swapping to the second rule set. Swapping to the second rule set, in turn, comprises the following steps: (i) signaling each of the processors to process packets in accordance with the second rule set; (ii) ceasing processing of the packets; (iii) caching unprocessed packets; (iv) reconfiguring the processors to process packets in accordance with the second rule set; and finally (v) signaling completion of the reconfiguration. In response to such signaling, the processors process the cached unprocessed packets.

9. In the German Infringement Action, Centripetal alleges that Cisco's routers, switches, and firewalls, together with the Cisco Firepower Management Center and Cisco DNA

---

[1] For the Court's convenience, I attach to my declaration English translations of the relevant court filings, letters, and orders from the German Infringement Action.

DECLARATION OF MIRIAM KIEFER LL.M.

3

Center services (collectively, the "Attacked Embodiment"), infringe the EP 065 Patent because they perform the claimed method steps for the change of rule sets.

10. In particular, when the Attacked Embodiment swaps rules, packet processing ceases entirely, so that received packets can be cached and the Attacked Embodiment can update its rule set. After swapping rules, packets that had not been processed are processed using the updated rule set. This functionality is included in the "ACL Hitless Update" technology.

11. Centripetal alleges that the functionality of the ACL Hitless Update implements features of the patented method. Centripetal further alleges that the steps of the ACL Hitless Update demonstrate the signaling claimed by the EP 065 Patent, because the rule swap is completed during which no packets are processed, which means the processor must be signaled.

12. On December 10, 2021, the Düsseldorf Trial Court ruled against Centripetal in the German Infringement Action. Ex. C-2. The Düsseldorf Trial Court reasoned that Centripetal had not proven that the ACL Hitless Update demonstrated infringement. The Düsseldorf Trial Court did not make specific findings about the signaling that takes place in the ACL Hitless Update.

13. Centripetal timely appealed the dismissal to the Higher Regional Court, Düsseldorf, Germany (the "Düsseldorf Appellate Court"). Ex. C-3. Centripetal's appeal argues that the Düsseldorf Trial Court incorrectly construed the method claim and incorrectly assessed the Attacked Embodiment. In particular, Centripetal contends that the Düsseldorf Trial Court overlooked a critical fact: that entering and exiting to swap rules while no packets are processed necessitates a signal.

14. The Düsseldorf Appellate Court held a hearing on Centripetal's appeal on December 8, 2022, which I attended. Ex. C-4. At the start of the hearing, Judge Kühnen presented the

preliminary view of the Düsseldorf Appellate Court. Judge Kühnen referenced Centripetal's brief, filed December 7, 2022, in which Centripetal explained in detail its infringement allegations.

15. I understood Judge Kühnen to suggest that the Düsseldorf Appellate Court may interpret the asserted claims differently than did the Düsseldorf Trial Court. Specifically, I understood Judge Kühnen to suggest that it is unnecessary for Centripetal to show a strict causal relationship between the signaling and the cessation/restarting of packet processing to succeed in proving infringement. Judge Kühnen suggested that signaling requires only that a specific command is transferred and that Centripetal therefore need only show that the packet processing will always cease if a rule swap is signaled.

16. Judge Kühnen indicated that, on the current record, the Düsseldorf Appellate Court did not understand in detail how signaling is implemented in the Attacked Embodiment. Judge Kühnen stated that the Düsseldorf Appellate Court therefore was not in a position to verify or falsify the details of the Attacked Embodiment, and consequently was unable to decide the case at that time. Judge Kühnen indicated that the Düsseldorf Appellate Court might appoint an expert to assist it, but that it would first like to hear Cisco's explanations regarding how the Attacked Embodiment works. Cisco's counsel confirmed at the hearing the facts regarding the Attacked Embodiment that Centripetal had presented in its December 7 brief.

17. On December 12, 2022, the Düsseldorf Appellate Court cancelled the date for announcing a decision, which had been scheduled for January 19, 2023. The court issued an order stating that it was considering engaging an independent expert to render an expert opinion that is "likely to become necessary." Ex. C-5.

18. On January 19, 2023, Centripetal filed a brief consenting to the court's appointment of an expert, Mr. Söylemezoglu. Ex. C-6. Cisco opposed. Exs. C-7, C-8.

19. Under German law, a court in patent infringement proceedings may order the production of evidence, or appoint an expert to evaluate evidence, concerning the functionality of an attacked embodiment only when that functionality would decisively establish infringement. Centripetal asked Cisco to permit review of its source code by a court-appointed expert in the German Infringement Action. Ex. C-9. Cisco declined. Ex. C-10.

20. On March 9, 2023, the Düsseldorf Appellate Court issued an order appointing Mr. Nazim Söylemezoglu as an expert. Ex. C-11. The order requested that the expert issue an expert opinion on claim interpretation, as well as on the question whether the Attacked Embodiment infringed the asserted patent.

21. The March 9, 2023 order further stated that Mr. Söylemezoglu, the expert, "shall take into account all the relevant technical submissions of the parties in the framework of his expert opinion." Ex. C-11 at 5. Although the Düsseldorf Appellate Court did not see a reason "[a]t present" to affirmatively order production of source code by Cisco to the expert, the Court did provide that he could request "further information or documents" and could require "an inspection or other practical tests." *Id*.

22. Centripetal's appeal remains pending.

**B. DISCOVERY SOUGHT BY CENTRIPETAL AND ITS RELEVANCE TO THE GERMAN INFRINGEMENT ACTION**

23. Centripetal seeks this Court's assistance in obtaining excerpts of Cisco's source code that relate to certain functionality and features in Cisco's accused products, as well as testimony from a deponent who can authenticate the source code and explain how it works. If Centripetal can demonstrate, via the source code, that the Attacked Embodiment contains instructions that signal the rule swap and implement the new rule set, that could warrant reversal of the Düsseldorf Trial Court's finding of non-infringement.

24. The discovery sought is central to the German Infringement Action. As discussed above, the Düsseldorf Trial Court ruled against Centripetal because it concluded that Centripetal had failed to prove that the Attacked Embodiment issues a signal to ensure no packets are processed while rules are swapped. Ex. C-2. It is central to Centripetal's appeal that such functionality necessitates a signal. The source code relating to the relevant functions of the Attacked Embodiment will enable Centripetal to prove to the Düsseldorf Appellate Court that infringement occurred by showing how the Attacked Embodiment technically achieves signaling a processor to swap rules while no packets are processed.

25. Centripetal recently explained in briefing to the Düsseldorf Appellate Court the relevance of Cisco's source code for demonstrating the relevant functionality of the Attacked Embodiment. Ex. C-12.

26. In addition, in my opinion, if the recently appointed independent expert in the German Infringement Action had access to Cisco's source code regarding the Attacked Embodiment, he would accept, review, and assess the Cisco source code in assisting the court in resolution of the appeal.

C. **DISCOVERY PROCEDURES UNDER GERMAN LAW**

27. German civil procedure is primarily governed by the Code of Civil Procedure, or Zivilprozessordnung ("ZPO").

28. German law and the ZPO provide for very limited pre-trial discovery, even from parties. *See* Schoenknecht, 2011, GRURInt, p. 1000 (1004); Zoeller/Greger, ZPO, 34th edition 2022, section 142, margin 2; Hornkohl, 2021 GVRZ, p. 17.

29. In particular, Section 142 of the ZPO permits a party to request that an opposing party produce specific documents that are known to exist and that are specifically identified. *See*

German Federal Supreme Court, decision dated 27 May 2014, XI ZR 264/13, para. 25, 28; Zoeller/Greger, ZPO, 34th edition 2022, section 142, margin 2; Musielak/Voit/Stadler, ZPO, 19th edition 2022, section 142, margin 4a.

30.     To obtain Section 142 ZPO discovery, the requesting party must justify the request to the court by explaining how each *specific* document requested will be used to support a claim or defense in the lawsuit.  *See* German Federal Supreme Court, decision dated 26 June 2007, XI ZR 277/05, para. 20; Musielak/Voit/Stadler, ZPO 19th edition 2022, section 142, margin 1.  To carry this burden, the requesting party must therefore already have specific knowledge of both the document's existence and its content.

31.     Even where a party has been ordered to produce a specifically identified document pursuant to Section 142 ZPO, German law provides no mechanism to enforce such an order if a party refuses to comply.  *See* German Federal Supreme Court, decision dated 26 June 2007, XI ZR 277/05 para. 20; Zoeller/Greger, ZPO, 34th edition 2022, section 142, margin 15.  While German courts are able to impose certain limited consequences for non-complying parties (such as adverse inferences), in my experience, these consequences are rarely levied, reducing parties' incentives to cooperate with such orders.  Other sanctions that might act as stronger enforcement mechanisms, such as contempt of court and financial penalties, are not available to German courts to compel a party to produce evidence pursuant to Section 142 ZPO.

32.     In addition, the jurisdictional reach of German courts is limited.  There is no clear authority that allows a German court to compel foreign citizens or entities that are parties to a German proceeding to produce documents located outside of Germany.  While some legal scholars consider that it may be possible for a German court to compel discovery from a foreign citizen or entity that is a party to a German proceeding, others deny this possibility.  Musielak/Voit/Stadler

ZPO, 19th edition 2022, section 363, margin 9, 12 (opining that production should not be available); BeckOK, ZPO, 47th edition 2022, section 363, margin 13 et seq.; Stein/Jonas/Berger, ZPO, 23rd edition 2015, section 363, margin 9 et seq. (opining that production should be available).

33. In my opinion, there are several practical obstacles to trying to use Section 142 ZPO to obtain Cisco's source code in the German Infringement Action.

34. First, while Centripetal believes that portions of Cisco's source code will assist in proving its case for infringement, it cannot request the source code with the specificity typically required by Section 142 ZPO.

35. Second, even if Centripetal were able to secure an order under Section 142 ZPO ordering Cisco to produce portions of its source code, it is my view that Centripetal would not have any effective means of enforcing such an order.

36. Finally, although independent experts appointed by German courts may request documents from parties, they too have no authority under German law to compel the production of any documents or testimony. Indeed, I believe that the Düsseldorf Appellate Court's observation, in its March 9, 2023, order, that it would not itself consider directing Cisco to produce source code "[a]t present," is a reflection of its constraints in this regard.

37. Considering the substance of Centripetal's discovery requests, the limited options for discovery under German law, and the absence of any effective enforcement mechanisms, I am of the view that there is no promising mechanism for discovery under German law through which Centripetal may obtain the Cisco source code excerpt that it seeks here. This is particularly true given Cisco's prior refusals to produce its source code, as explained below.

38. It is my view that there is not any German discovery procedure through which Centripetal could obtain testimony from a deponent who could authenticate the Cisco source code and explain how it works.

### D. RECEPTIVITY OF GERMAN COURTS TO FOREIGN DISCOVERY

39. It is my view that the Düsseldorf Appellate Court presiding over the German Infringement Action, as well as the appointed expert, would likely consider source code and other evidence obtained by Centripetal through its present Section 1782 application.

40. German courts are receptive to foreign discovery, including discovery obtained through Section 1782. Under German law, any documents obtained pursuant to Section 1782 can be formally introduced into German proceedings and German courts will consider such evidence.

41. German evidentiary law also contains a broad, permissive admissibility standard. German courts must take into consideration all evidence that is submitted to them. This principle is in accordance with German Basic Law article 103 para 1, which provides a constitutional right of access to courts and with Section 286 para. 1 ZPO, which obligates courts to investigate the facts of a case to the extent possible (and necessary). *See* German Federal Supreme Court, decision of 19 June 2002, NJOZ, 2002, 2019 et seq.

42. The German Supreme Court has held that the enforcement of a United States judgment in Germany is not precluded when the judgment was based on evidence obtained through pre-trial discovery proceedings in the United States. *See* German Federal Supreme Court, decision of 4 June 1992, NJW 1992, 3096, 3099 (holding that the reliance on evidence obtained through foreign discovery does not violate German public order). German legal scholars have interpreted this holding as supporting the admission of evidence obtained under Section 1782 in German proceedings. *See, e.g.*, Schoenknecht Beweisbeschaffung in den USA zur Verwendung in

deutschen Verfahren, GRUR Int 2011, 1000, 1007 with reference to Eschenfelder, Verwertbarkeit von Discovery-Ergebnissen in deutschen Zivilverfahren, RIW 2006, 443, 447; *see also* Müller-Stoy, Grundzüge des U.S.-amerikanischen Patentverletzungsverfahrens, GRUR Int. 2005, 558, 563.

43. Documents produced from one party to another are generally admissible evidence in Germany and parties are entitled to submit evidence in support of their positions in German proceedings, including when the evidence was obtained under Section 1782. This is true at the appellate court level as well.

44. German appellate courts generally review appeals *de novo*, including issues of fact implicated in such appeals. In addition, German appellate courts may review evidence that was not before the trial court if it was not available to the submitting party during the trial proceedings. Under German law, Cisco's source code related to the Attacked Embodiments was unavailable to Centripetal at the trial stage because Centripetal could not obtain the source code without Cisco's assistance.

45. There is no German law, rule of evidence, or rule of procedure that prohibits a party from seeking discovery under Section 1782 or using any discovery obtained under Section 1782 in German court proceedings.

46. Indeed, in the German Infringement Action, the Düsseldorf Trial Court and the Düsseldorf Appellate Court both have already considered evidence obtained from U.S. litigation that was not subject to a protective order in the United States.

47. In my view, the March 9, 2023 order by the Düsseldorf Appellate Court appointing an expert does not foreclose obtaining the source code here. While the Düsseldorf Appellate Court declined Centripetal's suggestion that Cisco be ordered to produce source code in the German

Infringement Action right now, it deferred to the expert regarding whether he wished to consider further information and documents, or engage in an inspection or other practical tests. In my experience, an inspection or other practical tests often involves review of underlying source code.

48. Given that German courts are generally receptive to Section 1782 discovery and liberally admit evidence obtained by the parties, I am of the view that authorizing Section 1782 discovery would not offend the German courts, and that any evidence produced in connection with Centripetal's Section 1782 application would be considered by the Düsseldorf Appellate Court in the German Infringement Action.

E. **CENTRIPETAL'S PRIOR ATTEMPTS TO OBTAIN THE RELEVANT EXCERPT OF SOURCE CODE**

49. In the German Infringement Action, Centripetal previously requested that Cisco produce the source code excerpt that it seeks here, but Cisco refused to produce it.

50. In its brief to the Düsseldorf Appellate Court opposing appointment of an expert, Cisco noted that it had previously provided Centripetal with access to its source code in connection with related litigation between the parties filed in federal district court for the Eastern District of Virginia (the "Virginia Action"). Ex. C-8. Cisco suggested that Centripetal could use the source code it obtained in the Virginia Action to support its claims in the German Infringement Action. *Id.* ¶ 4 ("[Centripetal] had access to the source code in the USA and can base its contestation on this knowledge.").

51. But when Centripetal requested that Cisco consent to amend the protective order in the Virginia Action to permit Centripetal to use the source code produced in that action in the German Infringement Action, Cisco refused that request. Ex. C-9; Ex. C-10.

### F. CONFIDENTIALITY PROTECTIONS AVAILABLE UNDER GERMAN LAW AND AGREED TO BY CENTRIPETAL

52. There are adequate confidentiality protections available under German law to ensure the confidentiality of any discovery produced by Cisco in this Action.

53. In Germany, third parties do not have access to court files or records without court approval and a showing of need. While oral hearings in German court proceedings are open to the public, German courts will exclude the public from an oral hearing pursuant to section 172(ii) of the German Courts Constitution Act, or Gerichtsverfassungsgesetz ("GVG"), if an important business, trade, invention or tax secret is discussed, the public discussion of which would violate overriding interests worthy of protection.

54. In Germany, pursuant to Section 145a of the German Patent Act ("PatG"), parties to a patent infringement proceeding are able to request that a court keep materials constituting trade secrets completely and permanently confidential, even after the conclusion of the proceeding. Any such materials will be exempt from file access by third parties. Information constituting a trade secret and contained in court documents will be redacted before any third party is given file access. Parties can also request that the court limit the access to materials constituting trade secrets to a select list of individuals.

55. Here, I understand that Centripetal will agree to request that any discovery produced pursuant to this Action be considered a trade secret for purposes of ensuring Section 145a protection and that the German Court designate it as confidential.

56. Centripetal will also agree to designate all evidence obtained through this Action as "Attorneys Eyes Only," and it will waive its right under German law to permit a party representative to review the source code excerpts and to attend any deposition.

57. In addition, it is my understanding that Centripetal has proposed a Protective Order in this Action that further seeks to protect the confidentiality of any information or documents produced by Cisco in this Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: March 22, 2023

_____
Miriam Kiefer, LL.M.

**ATTESTATION**

In accordance with Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

*/s/ Kristopher Kastens*
Kristopher Kastens

DECLARATION OF MIRIAM KIEFER LL.M.
15