UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In the Matter of the Application of CENTRIPETAL NETWORKS, LLC, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings, Pursuant to the Federal Rules of Civil Procedure, from Respondent Cisco Systems, Inc. | Case No. 23-mc-80086-VKD<br><br>**ORDER DENYING EX PARTE APPLICATION FOR AN ORDER AUTHORIZING SUBPOENA PURSUANT TO 28 USC § 1782 WITHOUT PREJUDICE**<br><br>Re: Dkt. No. 1 |

Applicant Centripetal Networks, LLC ("Centripetal") applies ex parte for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for source code and deposition testimony on Cisco Systems, Inc. ("Cisco"). Dkt. No. 1.[1] The Court denies the application without prejudice.

**I.   BACKGROUND**

According to the application, Centripetal is a Delaware limited liability company that provides network-security technologies. Dkt. No. 1 at 1, 2. It is the owner of European Patent 2 944 065 ("EP 065 patent") which is directed to a method that enables network devices to change or update network traffic processing rules without affecting network traffic. *Id.* at 2, 3.

On April 30, 2020, Centripetal filed an action, *Centripetal Networks, Inc. v. Cisco Systems, Inc. et al.*, I-2 U 38/21, against Cisco Systems, Inc. ("Cisco") in Germany for infringement of the EP 065 patent ("German litigation"). *Id.* at 1, 3. The trial court found that Cisco did not infringe,

---

[1] All parties appearing have indicated their consent to magistrate judge jurisdiction. Dkt. Nos. 8, 11.

1  and Centripetal has appealed that decision to the Higher Regional Court of Düsseldorf, Germany
2  ("Düsseldorf Appellate Court"). *Id.* at 3. The parties are also adversaries in a domestic patent
3  infringement action involving a related U.S. patent. *See Centripetal Networks, Inc. v. Cisco*
4  *Systems, Inc.*, No. 2:18-cv-00094-MSD-LRL (E.D. Va.). *Id*. at 4.

      According to Centripetal, under German law, appellate courts review *de novo* both legal conclusions and factual findings. *Id.* at 3. In aid of its appeal, Centripetal wishes to obtain excerpts of Cisco's source code that it contends are relevant to the accused products at issue in the German litigation. *Id*. at 5. Specifically, Centripetal seeks the following documents:

1. Source Code relating to the feature(s) in Cisco's Accused Switches, Accused Routers, and Accused Firewalls that cause the product to stop processing packets under an old rule set and begin processing packets under a new rule set.
2. Source Code relating to the feature(s) in Cisco's Accused Switches, Accused Routers, and Accused Firewalls that cause the product to cease processing packets and to cache packets during a switch in rule sets.
3. Source Code relating to the feature(s) in Cisco's Accused Switches, Accused Routers, and Accused Firewalls that cause the product to resume processing packets after a switch to a new rule set.
4. Source Code relating to the technology described in Cisco's Hitless ACL.
5. Source Code relating to the Hitless ACL feature(s) in Cisco's Accused Switches and Accused Routers that return a "success" output after adding new rules to the TCAM and deleting old rules from the TCAM.
6. Source Code relating to the feature(s) in Cisco's Accused Switches and Accused Routers that cause the product to complete a reconfiguration process, including to move a new rule set into the TCAM, validate that the move occurred, and validate the completion of the process.
7. Source Code implementing Hitless ACL Change Flow steps 7 through 11 in Cisco's Accused Switches and Accused Routers.
8. Source Code relating to the technology described in Cisco's configuration guide.
9. Source Code relating to the transactional commit model in Cisco's Accused Firewalls that cause the product to compile new rules and then verify that compilation of new rules is complete.
10. Source Code relating to the transactional commit model in Cisco's Accused Firewalls that cause the product to switch from processing packets using old rules to processing packets using new rules that are compiled and ready for use.

2

Dkt. No. 1, Ex. A. In addition, Centripetal seeks deposition testimony from a Cisco representative to authenticate and explain the source code. *Id.*, Ex. B.

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 1782, a district court may order the production of documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The statute may be invoked where: (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *Intel*, 542 U.S. at 246.

A district court is not required to grant an application that meets the statutory criteria, but instead retains discretion to determine what discovery, if any, should be permitted. *Id.* at 264. In exercising that discretion, the court considers several factors:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* at 264-65.

A district court's discretion is guided by the twin aims of § 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts. *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d Cir. 2004). The party seeking discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at

3

247, 261-63.

Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an *ex parte* basis, since "'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *IPCom GmbH & Co. KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (quoting *In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010)). "Consequently, orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*." *In re: Ex Parte Application Varian Med. Sys. Int'l AG, Applicant*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

Unless the district court orders otherwise, the discovery authorized by the court must be obtained in accordance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1020 (9th Cir. 1994).

### III. DISCUSSION

#### A. Statutory Requirements

Centripetal's application satisfies the statutory requirements of 28 U.S.C. § 1782(a). First, the subpoena seeks discovery from Cisco, which has its principal place of business in the Northern District of California. Dkt. No. 1 at 1, 5. Second, Centripetal requests this discovery for use in a pending patent infringement action in Germany. *Id.* at 1, 3-5, 6. Third, Centripetal, as the plaintiff in the patent infringement action, is an interested person within the meaning of the statute. *Id.* at 6.

#### B. *Intel* Factors

Even if the Court has the authority to grant Centripetal's § 1782 application, that does not mean the Court is required to do so. *Intel*, 542 U.S. at 247. In determining whether judicial assistance under § 1782 is appropriate, the Court must consider the additional, non-exhaustive

*Intel* factors.

### 1.     Participation of target in the foreign proceeding

This factor addresses whether the discovery material is obtainable through the foreign proceeding, without resort to § 1782. *In re Varian Med. Sys.*, 2016 WL 1161568, at *3. As the Supreme Court has observed:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264.

Cisco is the defendant in the German litigation. While it appears that the Düsseldorf Appellate Court and/or the expert that court has appointed could request that Cisco produce its source code and other evidence, Centripetal contends that neither has effective authority to *compel* such production. *See* Dkt. No. 1 at 7-8; Dkt. No. 1-4 ¶¶ 28-38.

Centripetal acknowledges that it has already asked the Düsseldorf Appellate Court to order Cisco to produce its source code. The court declined to issue such an order, stating as follows:

> With regard to the question of which concrete mode of operation of the attacked forms of design the infringement test should be based on, the expert should be guided by the plaintiff's statement of 7 December 2022 (p. 1225 ff. court file).
>
> In addition, the expert shall take into account all the relevant technical submissions of the parties in the framework of his expert opinion and respond to them in an appropriate manner when answering the individual evidentiary questions.
>
> For reasons of impartiality, the expert must refrain from any unilateral contact with the parties and their representatives (including lawyers) and conduct any correspondence via the court. *Should the expert require further information or documents, these must therefore be requested via the court*.
>
> If an inspection or other practical tests are required, for which the parties are to be called in (which is at the discretion of the expert), both sides are to be summoned in good time.
>
> *At present, the Senate sees no reason for the order for reference*

5

> *suggested by the plaintiff with regard to the source code of the contested embodiments, which has been expertly examined in proceedings conducted in the USA.  First, the expert examination shall be carried out.*

Dkt. No. 1-5, Ex. C-11 at ECF 192 (emphasis added).  This order does not specifically address the question of whether the Düsseldorf Appellate Court has the authority to compel Cisco to produce its source code, but it does clearly state that in this particular litigation (1) the expert should carry out his examination of the evidence first, without regard to the source code, and (2) if the expert requires further information or documents, he must request them via the court and not obtain the materials directly from the parties.

Regarding the question of whether the source code and related testimony Centripetal seeks may be obtained through the German litigation, without resort to § 1782, this factor is at best neutral.

### 2. Receptivity of foreign tribunal to U.S. judicial assistance

Under this factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys.*, 2016 WL 1161568, at *4.  "[I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved." *Id.* (internal quotations and citations omitted).  Courts have denied requests for discovery where the foreign tribunal or government expressly says it does not want the U.S. federal court's assistance under § 1782.  *See, e.g.*, *Schmitz*, 376 F.3d at 84-85 (affirming the denial of discovery where the German government expressly objected to the information sought due to concerns that it would jeopardize an ongoing German criminal investigation, as well as German sovereign rights); *In re Ex Parte Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040-41 (N.D. Cal. 2016) (concluding that this *Intel* factor weighed heavily against discovery where the Korean Fair Trade Commission filed an amicus brief stating that it had no need or use for the requested discovery).

6

Centripetal argues that the Düsseldorf Appellate Court has indicated a willingness to entertain additional information about Cisco's alleged infringement on appeal. Dkt. No. 1 at 8. It also argues that the court has already accepted and considered other information obtained by the parties in their U.S. litigation. *Id.* at 9. Finally, Centripetal points out that other courts in this district have concluded that German courts generally are receptive to evidence obtained using U.S. discovery procedures. *Id.*

The difficulty with Centripetal's argument is that the record before the Court suggests that while the Düsseldorf Appellate Court and/or the appointed expert might be receptive to receiving Cisco's source code in the pending appeal, the German court has already expressed its views on this point: It will not receive source code evidence "at present." Thus, while German courts may be receptive generally to receiving discovery obtained in the United States, the court presiding over the appeal has indicated it is not receptive to the evidence at this time and has directed the appointed expert to proceed with his examination based on the evidence already available. *See* Dkt. No. 1-5, Ex. C-11 at ECF 192.

The Court concludes that this factor weighs against authorizing service of the subpoenas.

### 3. Circumvention of proof-gathering restrictions

Under this factor, the Court considers whether Centripetal's request for discovery "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "'A perception that an applicant has "side-stepped" less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Varian Med. Sys.*, 2014 WL 1161568, at *5 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)). Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014); *see also In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018) (finding that the third *Intel* factor weighed in favor of discovery where there was "no evidence" of an attempt to circumvent foreign proof-gathering

7

1 restrictions or policies).

2     Centripetal argues that German law imposes no specific restrictions that would prohibit the
3 discovery it seeks here, and that there are no policies law that would limit the gathering of the
4 evidence Centripetal seeks here.  Dkt. No. 1 at 10.  In the absence of contrary information, the
5 Court concludes that this factor weighs in favor of authorizing service of the subpoenas.

### 4. Unduly burdensome or intrusive discovery

7     Under this factor, the Court considers whether the discovery sought is "unduly intrusive or
8 burdensome."  *Intel*, 542 U.S. at 265.

9     Centripetal's proposed document subpoena to Cisco seeks 10 different categories of source
10 code.  While Centripetal describes these categories of source code as "overlap[ping]" with the
11 source code Cisco has produced in the related U.S. litigation (*see* Dkt. No. 1 at 12), the production
12 it seeks for use in Germany is broader.  In other words, Cisco could not satisfy Centripetal's
13 proposed subpoena simply by making available for use in the German litigation source code it has
14 already produced to Centripetal in the United States.  Centripetal's proposed deposition subpoena
15 mirrors the document subpoena in that it seeks testimony authenticating and explaining the source
16 code responsive to the document subpoena.  *See* Dkt. No. 1, Exs. A, B.  Centripetal explains that
17 the discovery it seeks is "narrowly tailored" (*see* Dkt. No. 1 at 11), but it is difficult for the Court
18 to assess the burden that production of the requested source code might entail, particularly as it
19 will necessarily exceed what Cisco has already produced in the related U.S. litigation.

20     As Centripetal anticipates, a demand for production of source code and related testimony
21 typically implicates serious confidentiality concerns of the producing party.  Centripetal has taken
22 steps to address those concerns by requesting entry of a protective order to govern the production
23 of this material.  Dkt. No. 1 at 12; *see also* Dkt. No. 3.  In addition, Centripetal observes that
24 similar protections for confidential information are available in the Düsseldorf Appellate Court.
25 Dkt. No. 1 at 13.

26     In these circumstances, the Court concludes that if Cisco's production of source code and
27 related testimony is limited to what Cisco has already provided in the U.S. litigation, and it is
28 afforded protections under the proposed protective order, the discovery would not be unduly

8

intrusive or burdensome.  It is not possible for the Court to make an assessment about the burden of production for the full scope of the document and deposition subpoenas without Cisco's input. But this concern could be addressed if Cisco elected to file a motion to quash after service after service of the subpoenas.  Accordingly, on balance, this factor favors authorizing service of the subpoenas.

## IV.  CONCLUSION

Centripetal's application meets the statutory criteria for an order authorizing service of the proposed subpoenas.  However, the factors that inform the Court's exercise of its discretion under *Intel* do not clearly favor authorizing service of the subpoenas, and one factor weighs against authorizing service.  The critical factor in the Court's analysis is the order of the Düsseldorf Appellate Court, which provides: (1) there is no need for an order for the production of source code "at present"; (2) the appointed expert shall conduct his examination first; and (3) if the expert requires further information or documents, he shall make a request via the court and not via communications with the parties.  In view of this order, the Court denies Centripetal's ex parte application for an order authorizing service of the proposed subpoenas, without prejudice.  If the Düsseldorf Appellate Court and/or the appointed expert requests or invites the production of Cisco's source code or related testimony, Centripetal may so inform this Court and renew its application.  The motion for entry of a protective order is also denied without prejudice for the same reasons, and it also may be renewed at the appropriate time.

**IT IS SO ORDERED.**

Dated: April 26, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge